JOHN W. CORCORAN *vs.* SNOW CATTLE COMPANY & others.
SAME *vs.* SNOW CATTLE COMPANY.

Worcester.    October 2, 1889. — February 26, 1890.

Present: MORTON, C. J., FIELD, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Promissory Note — Corporation — Knowledge of Agent — Authority*
*of Treasurer.*

The president of a bank, acting in his own interest and not in that of the bank, procured the discount of certain promissory notes of a cattle company, given by its treasurer, from the directors of the bank, who had no knowledge or notice of any fact affecting the validity of the notes. *Held,* that the bank was not chargeable with the president's knowledge of any such fact, and, in the absence of evidence to the contrary, was warranted in assuming that the company had the power to issue, and its treasurer the authority to give, the notes.

HOLMES, J.    These actions are brought upon two promissory notes, signed, " Snow Cattle Co., A. N. Lowe, Treas.," payable to the order of I. A. Lowe and Company, a firm consisting of I. A. Lowe and his brother A. N. Lowe, and discounted by the Lancaster National Bank, of which the plaintiff is receiver.    According to the testimony, which, however, the judge may have disbelieved, the notes in suit were renewals of similar notes signed by A. N. Lowe for the accommodation of another cattle company, called the Lowe Cattle Company, in which the Lowes and McNeil, the president of the Lancaster Bank, were interested, in pursuance of a scheme of the three to get them discounted at that bank.    McNeil took the original notes and got them discounted as proposed.

The judge has found that McNeil, who is now a fugitive from justice, was acting in his own interest and in that of the Lowe Cattle Company, and did not act for the bank; and that the directors of the bank knew and approved of the discount, either at the time or after McNeil actually had procured the discount, but without knowledge or notice of any fact affecting the validity of the notes.    He refused to rule that the bank was affected with McNeil's knowledge with reference to the notes which he procured to be discounted by it, and found for the plaintiff. The first question arises on the defendants' exception to this

refusal. We are of opinion that it was correct. If McNeil went to the directors, and procured from them a discount of the notes in his hands, he representing for the moment the adverse party, then his knowledge was not the knowledge of the bank, and the case is governed by *Innerarity* v. *Merchants' National Bank*, 139 Mass. 332. This is one possible aspect of the facts which is not excluded by the specific findings of the judge.

It is true that there is another aspect which does not seem less probable; and that is, that McNeil in the first instance exchanged the bank's money for the notes himself. In that view, as it was through McNeil's hand that the bank became possessed of the notes, it would be much more difficult to maintain that the bank was not chargeable with his knowledge, or that an innocent ratification could change the character of the original transaction. *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268. But if the bank would be chargeable upon that state of facts, the ruling asked was not conditional upon the judge's finding them to have existed, and therefore it was rightly refused. As he found for the plaintiff, and as the only question is on the refusal to rule without qualification, we must presume that he did not find facts which would have made the ruling requested proper.

An exception was also taken to the refusal of the judge to rule that the plaintiff was not entitled to recover on the ground that A. N. Lowe, as treasurer of the Snow Cattle Company, had no authority to give the notes in suit. As we already have stated our opinion that it cannot be assumed, as matter of law, that the bank knew whatever McNeil knew, the question is whether the notes were void in the hands of a *bona fide* purchaser for value. We cannot say that they would be. The evidence discloses no reason to doubt that the corporation had the usual power of a trading corporation to make notes, or that the treasurer had the usual authority of treasurers of such corporations. The bank, if it acted in that belief, had a right to assume that Lowe had such authority. *Fay* v. *Noble*, 12 Cush. 1. *Narragansett Bank* v. *Atlantic Silk Co.* 3 Met. 282, 289. The by-laws provide that the treasurer shall sign all notes, contracts, etc., thus expressing in part what would be implied without them. The judge found that Lowe signed the original notes and

their renewals, as treasurer of the company, with the knowledge and assent of the trustees and officers. If this be material, we cannot say that the finding was not warranted by the evidence.

*Exceptions overruled.*

*A. Norcross & H. C. Hartwell,* (*C. F. Baker* with them,) for the Snow Cattle Company.

*J. W. Corcoran & H. Parker,* for the plaintiff.